FILED
2025 Sep-26  PM 04:01
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | |
|---|---|
| **DAVID P. EMBLOM JR.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | |
| ) | **CIVIL ACTION NO.: _____** |
| **MATTHEW CLEVELAND, in his** ) | |
| **individual capacity, NATHAN** ) | |
| **WHITMAN in his individual capacity,** ) | **JURY TRIAL DEMANDED** |
| **and JOHN DOE 1, in his individual** ) | |
| **capacity,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

## COMPLAINT

Plaintiff David P. Emblom Jr., by and through undersigned counsel, brings this action against Matthew Cleveland, Nathan Whitman, and one unidentified deputy, and states as follows:

## INTRODUCTION

1.      This civil rights action arises from a brutal and wholly unjustified use of force by Madison County Sheriff's deputies inside the private home of Plaintiff David Emblom, where he resided and had lawful possessory rights. Deputy Nathan Whitman, while responding to a minor dispute and while Mr. Emblom was handcuffed, violently kicked his leg from behind, causing a severe tibial fracture and cracked heel.

1

2.     The incident left Mr. Emblom with permanent physical injuries, emotional trauma, and thousands of dollars in medical and legal expenses.

3.     Plaintiff brings this suit to hold the deputies accountable for violating his constitutional rights under the Fourth Amendment, for assault and battery under state law, and for other related wrongs. He seeks compensatory and punitive damages.

## PARTIES

4.     Plaintiff David Emblom is a resident of Madison County, Alabama, and was at all times relevant residing at 155 Kelly's Way in Harvest, Alabama.

5.     Defendant Matthew Cleveland is a deputy sheriff employed by Madison County Sheriff's Office ("MCSO") at all times relevant to this incident. He was the reporting officer for this incident. He is sued in his individual capacity for his direct role in violating Plaintiff's rights.

6.     Defendant Nathan Whitman is a deputy sheriff employed by MCSO at all times relevant to this incident. He is sued in his individual capacity for his direct role in violating Plaintiff's rights.

7.     Defendant John Doe 1 is a deputy whose identity is not yet known but who participated in the use of force against Plaintiff. Plaintiff recalls that his last name is Best, and he went by "Deputy Best." He is sued in his individual capacity. Plaintiff reserves the right to amend upon identification.

## JURISDICTION AND VENUE

8.     This action arises under 42 U.S.C. § 1983 and the Fourth and First Amendments. The Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343, and supplemental jurisdiction over related state-law claims under 28 U.S.C. § 1367.

9.     Venue is proper in this District and Division under 28 U.S.C. § 1391(b)(2) because a substantial part of the events occurred in Madison County, Alabama, within the Northeastern Division.

## I.     FACTUAL ALLEGATIONS

### A. Lawful Presence and Initial Encounter with Deputies

10.     At all times relevant to this action, Plaintiff David Emblom was residing at 155 Kelly's Way in Harvest, Alabama, the home of his sister, Kelsey Emblom. Plaintiff had lawful possessory rights to the home, as a co-occupant, with the knowledge and consent of his sister. He was not a visitor, guest, or trespasser, but a rightful resident with constitutional protections afforded to persons inside their home under the Fourth Amendment.

11.     On the evening of September 28, 2023, Plaintiff and his sister had a disagreement in the shared living space. His sister claimed that he was intoxicated, but Mr. Emblom disputes this.

12.     At approximately 10:45 p.m., three MCSO deputies arrived at the residence in response to Ms. Emblom's call.

13.    Plaintiff met the deputies at the back porch of the home. The conversation remained entirely verbal. Plaintiff made no attempt to evade, resist, or escalate the situation. He remained composed and answered the deputies' questions.

14.    For 15 to 20 minutes, the deputies remained on the premises speaking with Plaintiff and his sister. At no point during this initial period did they indicate that Plaintiff was under suspicion of a crime. They made no moves to detain or restrain him, and did not enter the home. The situation had de-escalated entirely.

15.    As the encounter was winding down, one of the officers asked Ms. Emblom to provide her Social Security number. Plaintiff advised his sister not to disclose the information, as she had already provided officers with her ID and was not required to provide anything further.

16.    Without warning or justification, a deputy believed to be Matthew Cleveland turned to Plaintiff and stated, "You're going to jail." This abrupt declaration was unprovoked and appeared to be in retaliation for Plaintiff's advice to his sister.

17.    At that moment, Plaintiff turned his back to the deputies and began walking toward the interior of the residence to finish his conversation with his sister, and closed the back door behind him.

**B. Deputies Entered Plaintiff's Home Without a Warrant**

18.    Rather than allowing Plaintiff to re-enter his own place of residence, deputies responded by forcefully kicking open the back door of the home. They did not request to enter the residence, or call Plaintiff back outside. The kick damaged the doorframe and surrounding drywall.

19.    All three deputies then unlawfully crossed the threshold into the home and pursued Plaintiff inside.

20.    The entry was unlawful under clearly established constitutional law. No warrant had been issued, no emergency was present, and Plaintiff was neither fleeing nor suspected of a crime. There was no reason to believe anyone inside was in danger. The deputies lacked legal cause to enter the residence, and they did not seek or obtain consent from either co-occupant.

21.    This unlawful invasion of the home occurred simply because Plaintiff advised his sister not to provide her Social Security number to the deputies and was lacking any legal basis. The entry constitutes a direct violation of the Fourth Amendment.

**C. Seizure and Unreasonable Use of Force**

22.    Inside the residence, deputies confronted Plaintiff, who was upset and questioning the basis for his arrest and who was then handcuffed and walked to the police vehicle.

23.     While Plaintiff was being walked out, in a submissive posture and handcuffed, one of the deputies believed to be Nathan Whitman delivered a violent and forceful kick to Plaintiff's left leg.

24.     The blow caused a fracture to Plaintiff's left tibia, just below the patella, and cracked the calcaneus (heel bone). The fracture was immediately debilitating. Plaintiff collapsed from the impact, screaming in pain.

25.     This act of violence was wanton, sadistic, and objectively unreasonable. Plaintiff was completely restrained, posed no threat, and committed no crime. The use of force in this context was gratuitous and served no legitimate law enforcement purpose.

26.     It amounted to a violation of Plaintiff's Fourth Amendment rights to be free from excessive force and cruel, arbitrary state action.

**D. Arrest Without Probable Cause and Transport to Huntsville ER**

27.     After assaulting Plaintiff, deputies transported him to the Madison County Detention Facility. Upon arrival, jail staff examined Plaintiff's condition and immediately refused intake due to the visible severity of his injuries. The deputies were instructed to transport Plaintiff to Huntsville Hospital Emergency Room (HH ER), without delay.

28.     When Plaintiff was turned away from booking, Cleveland kicked

Plaintiff again, in the lower back as he was re-entering the police vehicle.

29.    Cleveland also exhibited an unusual driving pattern, slamming on the brakes causing the unbuckled and severely injured Plaintiff to be thrown into the seat in front of him, exacerbating the pain in his legs and body.

30.    At the HH ER, Plaintiff was diagnosed with a complex fracture of the left tibia and a cracked heel. On September 29, 2023, orthopedic surgeons performed internal fixation surgery, inserting a metal plate and six surgical screws to stabilize the fracture. Plaintiff remained hospitalized for three days, receiving pain management and post-operative care.

31.    Following discharge, deputies returned Plaintiff to MCDF, where he was booked and jailed for an additional day and night under charges of "obstruction" and "resisting arrest." Plaintiff maintains that he did not obstruct or resist the arrest.

**E. Damages**

32.    As a direct result of Defendants' actions, Plaintiff suffered severe and lasting physical injuries. He continues to experience chronic pain, limited mobility, and difficulty walking. The injuries have disrupted his daily activities and interfered with his ability to work and engage in physical exercise.

33.    To support his post-surgical recovery, Plaintiff was required to purchase a medical-grade leg brace from The Orthopaedic Center and also received follow-up care from UAB Medicine.

34.     Additionally, Plaintiff paid to repair the damage to the door and interior drywall caused by the deputies' unlawful entry.

35.     Plaintiff suffers from trauma, anxiety, and a heightened fear of law enforcement. He experiences flashbacks and stress symptoms triggered by memories of the assault and detention. The experience has undermined his trust in law enforcement and the justice system.

36.     Plaintiff's arrest record remains visible on background checks, causing reputational harm and potentially interfering with housing, employment, or educational opportunities.

### F. Deputies' Failure to Follow Basic Constitutional Standards

37.     At the time of the incident, Defendants Cleveland, Whitman, and John Doe 1 ignored the most basic constitutional limitations governing entry, arrest, and use of force. Their actions in this case do not fall in line with any lawful standard of police conduct.

38.     Any reasonably trained law enforcement officer knows that the Fourth Amendment bars warrantless entry into a home absent exigent circumstances, valid consent, or a lawful warrant. The home is afforded the highest protection under the Constitution, and no officer could have believed that their forced entry here was justified.

39.     Any reasonably trained officer also understands that once a subject is

restrained, non-resisting, and compliant, the use of physical force is strictly limited. The decision to strike Plaintiff's leg with such force that it shattered his bones was not a mistake, it was wanton and malicious conduct.

40.     Finally, officers are taught that individuals cannot be arrested in retaliation for speech. Plaintiff's simple and lawful statement to his sister, advising her not to disclose her Social Security number, was plainly protected. To answer that speech with arrest and violence demonstrates deliberate disregard for clearly established rights.

41.     In this case, the actions of the deputies deviate egregiously from these clearly established constitutional standards.

42.     Had deputies adopted even the most basic constitutional actions regarding warrantless entry, retaliation, and excessive force, Plaintiff's rights would not have been violated. This ignorance, or actions arising from it, was a moving force behind the injuries and violations Mr. Emblom suffered.

## CAUSES OF ACTION

### COUNT I
### Warrantless Entry
### Violation of the Fourth Amendment (42 U.S.C. § 1983)
### (Matthew Cleveland, Nathan Whitman, and John Doe 1 in their individual capacity)

43.     Plaintiff realleges and incorporates paragraphs 1 through 42.

44.     On September 28, 2023, Defendants Matthew Cleveland, Nathan

Whitman, and John Doe 1, entered Plaintiff's residence without a warrant, consent, or exigent circumstances. At the time of entry, Plaintiff was a lawful occupant of the home and had committed no crime. The entry was in direct retaliation for Plaintiff's protected speech and occurred absent any legal justification.

45.    There was no hot pursuit, ongoing emergency, threatened destruction of evidence, or risk to any person.

46.    The Fourth Amendment protects individuals against unreasonable searches and seizures, including warrantless entry into a home. The actions of these Defendants constituted an unlawful invasion of Plaintiff's private residence in violation of clearly established constitutional rights.

47.    As a direct and proximate result, Plaintiff suffered loss of liberty, property damage, emotional distress, and physical injury.

## COUNT II
### Excessive Force
### Violation of the Fourth Amendment (42 U.S.C § 1983)
### (Matthew Cleveland, Nathan Whitman, and John Doe 1 in their individual capacity)

48.    Plaintiff realleges and incorporates paragraphs 1 through 42.

49.    The Fourth Amendment guarantees every individual the right to be free from the use of excessive force during an arrest, investigatory stop, or other seizure. The use of force by law enforcement officers must be objectively reasonable in light of the facts and circumstances confronting them, and the reasonableness of such

force must be judged from the perspective of a reasonable officer on the scene. Where an individual is not resisting and has been fully restrained, any application of force must be strictly limited to what is necessary to maintain control or prevent harm.

50.     In this case, after unlawfully entering Plaintiff's home and handcuffing him, one of the deputies suddenly and without provocation delivered a violent, targeted kick to Plaintiff's lower leg while he was already in a fully restrained and non-threatening posture. Plaintiff was not resisting, not attempting to flee, and posed no danger to the deputies. He had committed no crime. The force used was not only unnecessary but gratuitous and malicious.

51.     The kick caused a tibial fracture and a cracked heel, requiring Plaintiff to undergo medical treatment including emergency care, diagnostic imaging, immobilization, and extended rehabilitation. The injury left Plaintiff temporarily disabled, reliant on assistance for basic mobility, and in prolonged physical pain. These are not minor or incidental harms, they are the predictable and direct result of an intentional, violent strike to a restrained man's leg by an officer acting under color of law.

52.     As a direct and proximate result of Defendants' unlawful use of force, Plaintiff suffered significant physical injury, emotional trauma, medical expenses, ongoing limitations in mobility, and profound distress. He is entitled to

compensatory and punitive damages under 42 U.S.C. § 1983.

## COUNT III
## False Arrest and Seizure
## (Matthew Cleveland, Nathan Whitman, and John Doe 1 in their individual capacity)

53.     Plaintiff realleges and incorporates paragraphs 1 through 42.

54.     This claim is brought under 42 U.S.C. § 1983 for violations of Plaintiff's rights under the Fourth Amendment to the United States Constitution, which protects against false arrest and unreasonable seizure.

55.     The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures, including arrests that are not supported by probable cause. Law enforcement officers must have a particularized and objective basis for believing that a person has committed a crime before effecting an arrest.

56.     At the time of Plaintiff's arrest, Defendants had no credible evidence that Plaintiff had committed, was committing, or was about to commit any crime. Plaintiff was lawfully present in his own residence, had committed no act of violence, made no threats, and did not resist any lawful command. The charges ultimately brought, "obstruction" and "resisting arrest," were wholly unfounded.

57.     Rather, the arrest was carried out in retaliation for Plaintiff's constitutionally protected speech and his exercise of the right to remain in his home. The charges served as a post hoc rationalization to justify the unconstitutional entry

into the home and the brutal, unjustified use of force inflicted upon him. No reasonable officer could have believed there was probable cause to arrest Plaintiff under the circumstances.

58.    The seizure of Plaintiff's person was not only unreasonable but abusive. He was handcuffed in his own home, subjected to excessive force while restrained, transported to jail, and held in custody after his multi-day hospital stay.

59.    In addition to the deprivation of liberty, Plaintiff suffered emotional trauma, and lasting reputational harm. He was photographed, fingerprinted, booked into the Madison County Detention Facility, and publicly labeled as a criminal, all stemming from an arrest that lacked even the bare minimum threshold of constitutional justification.

60.    The charges were ultimately dismissed or disposed of in Plaintiff's favor, yet the damage had already been done.

61.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer economic losses, physical pain, emotional distress, and damage to his reputation.

62.    Defendants are liable for these constitutional violations under 42 U.S.C. § 1983.

## COUNT IV
### Retaliatory Arrest
### Violation of the First and Fourth Amendments (42 U.S.C. § 1983)
### (Matthew Cleveland, Nathan Whitman, and John Doe 1 in their individual capacity)

63.     Plaintiff realleges and incorporates paragraphs 1 through 42.

64.     The First Amendment prohibits government officials from retaliating against individuals for engaging in protected speech.

65.     The First Amendment guarantees every individual the right to engage in free speech without fear of government retaliation. That protection includes verbal expression directed at law enforcement officers, even when such speech is unwelcome, critical, or offered during a police encounter, so long as it does not rise to the level of a true threat or obstruction.

66.     On September 28, 2023, during the conclusion of an otherwise peaceful and uneventful call, Plaintiff lawfully advised his sister not to disclose her Social Security number to law enforcement. This brief, calm statement, made in his own home and in a conversational tone was a textbook example of constitutionally protected speech.

67.     In direct response to this utterance, Cleveland abruptly declared, "You're going to jail." There had been no provocation, no criminal act, no escalation of behavior. Cleveland's statement was not a reaction to any physical interference or disorderly conduct, but rather a direct retaliation for Plaintiff exercising his First

Amendment rights.

68.     Plaintiff's arrest, immediately following this protected speech, was not based on any legitimate law enforcement rationale. Instead, it was clearly motivated by retaliatory animus, an intent to punish Plaintiff for expressing disagreement with the deputy's authority and for asserting his rights. Such conduct strikes at the core of First Amendment protections and violates well-established constitutional law.

69.     The arrest was further unsupported by probable cause, which strengthens the inference of retaliatory motive.

70.     Here, Plaintiff was arrested under pretextual charges of "obstruction" and "resisting arrest," despite having done nothing more than speak from a position of lawful authority in his own home and reflects deputies' gross abuse of power.

71.     The retaliatory arrest caused immediate and lasting harm to Plaintiff. He was seized, handcuffed, and taken to jail. He endured physical trauma, emotional distress, and reputational harm. The incident also disrupted his ongoing recovery and led to unnecessary medical and legal expenses.

72.     As a direct and proximate result of deputies' retaliatory actions, Plaintiff suffered violations of his constitutional rights under the First and Fourth Amendments and is entitled to compensatory and punitive damages under 42 U.S.C. § 1983.

## COUNT V
## Failure to Intervene
## Violation of the Fourth Amendment (42 U.S.C. § 1983)
## (Matthew Cleveland, Nathan Whitman, and John Doe 1 in their individual capacity)

73.     Plaintiff realleges and incorporates paragraphs 1 through 42.

74.     It is well-established that officers have an affirmative duty to intervene when they witness another officer using excessive force or violating the constitutional rights of an individual.

75.     Both Matthew Cleveland and John Doe 1 were present when Nathan Whitman delivered a violent kick to Plaintiff's leg while he was fully restrained and offering no resistance. Despite having ample opportunity to prevent or de-escalate the assault, neither intervened to stop the use of excessive force.

76.     Both Nathan Whitman and John Doe 1 were present when Matthew Cleveland kicked Plaintiff in the back when refused by booking due to his injuries.

77.     Their failure to intervene was deliberate, knowing, and causally linked to the injury suffered by Plaintiff. This inaction constitutes a constitutional violation for which both are liable under § 1983.

## COUNT VI
## False Arrest and False Imprisonment - Alabama State Law Claims
## (Matthew Cleveland, Nathan Whitman, and John Doe 1 in their individual capacity)

78.    Plaintiff realleges and incorporates paragraphs 1 through 42.

79.    Under Alabama law, false imprisonment occurs when a person is unlawfully detained against their will, without lawful authority, and without legal justification. It includes detention without probable cause or by means of unlawful force, intimidation, or coercion.

80.    In this case, Plaintiff was unlawfully arrested and detained despite having committed no crime. He was handcuffed inside his home following a warrantless entry and transported to the Madison County Detention Facility. He remained incarcerated for multiple days, even after being hospitalized due to injuries sustained from excessive force.

81.    The charges of obstruction and resisting arrest, used to justify the detention were entirely pretextual and fabricated post hoc to retroactively legitimize the unconstitutional conduct of Defendants.

82.    Defendants deprived Plaintiff of his freedom of movement, humiliated him through custodial processing, and forced him to remain in jail while injured and in pain all without lawful cause.

83.    As a direct and proximate result of this false imprisonment, Plaintiff experienced significant harm, including economic losses, emotional distress,

reputational damage, and physical suffering. Defendants are liable under Alabama law for compensatory damages.

## COUNT VII
### Assault and Battery – Alabama State Law Claims
### (Matthew Cleveland, Nathan Whitman, and John Doe 1 in their individual capacity)

84.    Plaintiff realleges and incorporates paragraphs 1 through 42.

85.    Under Alabama law, the torts of assault and battery are well-established. Assault occurs when a defendant intentionally causes another person to fear imminent physical contact. Battery occurs when a defendant intentionally causes harmful or offensive physical contact. Both claims require proof that the contact was neither legally justified nor consented to.

86.    At all times relevant, Plaintiff was lawfully present in his own home and posed no threat to the safety of law enforcement officers. He was unarmed, compliant, and cooperative. After being unlawfully seized and placed in handcuffs, Plaintiff was subjected to a violent and deliberate kick to the leg by one of the Defendant officers while other officers stood by and failed to intervene.

87.    The kick shattered Plaintiff's tibia and fractured his heel, resulting in immediate, excruciating pain and permanent orthopedic damage. The force used was not only unreasonable but malicious and retaliatory. It served no law enforcement purpose and occurred while Plaintiff was defenseless and restrained. This conduct was clearly outside the line and scope of the officers' duties.

18

88.    Defendants' actions were intentional, excessive, and in violation of Alabama law. The physical contact was not privileged or authorized under any legal justification, including lawful arrest or use-of-force standards.

89.    As a direct and proximate result of this unlawful physical assault and battery, Plaintiff suffered serious physical injuries, medical expenses, emotional trauma, and ongoing pain and suffering. Defendants are jointly and severally liable for these damages under Alabama tort law.

**COUNT VIII**
**Wantonness – Alabama State Law**
**(Against All Defendants)**

90.    Plaintiff realleges and incorporates paragraphs 1 through 42.

91.    Under Alabama law, wantonness occurs when a defendant acts with reckless or conscious disregard for the rights and safety of others. Law enforcement officers are not immune when acting willfully, maliciously, in bad faith, or beyond their authority.

92.    Defendants, individually and collectively, breached this duty by engaging in a series of reckless, unlawful, and unjustified acts on September 28, 2023. These acts include, but are not limited to:

a) Forcibly entering Plaintiff's home without a warrant, valid consent, or exigent circumstances;

b) Arresting Plaintiff in the absence of probable cause, under false and

retaliatory charges of obstruction and resisting arrest;

c) Inflicting serious physical harm on Plaintiff while he was handcuffed and offering no resistance, by delivering a violent kick that caused a comminuted tibial fracture and cracked heel;

d) Failing to intervene to stop the use of excessive force;

e) Transporting Plaintiff in an injured state to jail instead of directly to medical care;

f) Detaining Plaintiff while knowing or having reason to know the charges were unfounded and fabricated;

g) Failing to supervise or discipline the deputies responsible for these actions.

93.     Each of these actions, individually and collectively, constitutes wanton conduct reflecting a conscious and reckless disregard for Plaintiff's rights and safety.

94.     The warrantless entry into a private home, the decision to retaliate against constitutionally protected speech, the knowing application of unjustified force against a restrained civilian, and the deliberate continuation of criminal charges that lacked probable cause all reflect a conscious, deliberate, and reckless disregard for Plaintiff's well-being and for established legal norms.

95.     At no point was Plaintiff acting aggressively or unlawfully. He was a lawful occupant of the residence, had committed no crime, and did not pose a threat to himself or others. Despite this, Defendants escalated a verbal disagreement into a

violent, injurious, and traumatizing encounter, one that left Plaintiff with permanent physical and psychological harm.

96.     Defendants acted willfully, maliciously, in bad faith and beyond their authority.

97.     As a direct and proximate result of Defendants' wanton conduct, Plaintiff suffered physical pain, emotional distress, psychological trauma, and humiliation, alongside economic harm including medical expenses, legal fees, bond costs, and damage to property.

98.     Under Alabama law, Plaintiff is entitled to recover compensatory damages for these losses. Further, because Defendants' conduct constitutes wantonness, Plaintiff is entitled to punitive damages to punish and deter such egregious behavior in the future.

**COUNT IX**
**Negligence – Alabama State Law**
**(Against All Defendants)**

99.     Plaintiff realleges and incorporates paragraphs 1 through 42.

100.     Under Alabama law, negligence is defined as the failure to exercise reasonable care under the circumstances. Reasonable care is that degree of care, skill, and diligence which a reasonably prudent person would exercise in the same or similar circumstances. Law enforcement officers, in carrying out their duties, owe a duty of ordinary care to members of the public, including Plaintiff, to act in a manner

consistent with constitutional protections, applicable statutes, and established standards of police procedure.

101.   Defendants breached this duty of care by, among other things:

a)   Forcibly entering Plaintiff's home without lawful authority, consent, or exigent circumstances, thereby creating a foreseeable risk of harm;

b)   Arresting and detaining Plaintiff without probable cause, exposing him to unjustified deprivation of liberty and reputational harm;

c)   Employing unnecessary, excessive, and unreasonable physical force on Plaintiff after he was handcuffed, restrained, and compliant;

d)   Transporting Plaintiff in a physically compromised condition to jail rather than immediately to a medical facility, aggravating his injuries;

e)   Failing to properly secure and transport Plaintiff in the patrol vehicle, including reckless driving maneuvers that exacerbated his injuries;

f)   Damaging Plaintiff's property, including the back door and interior; and

g)   Failing to follow basic training, protocols, and established standards for lawful entry, probable cause determinations, use of force, and detainee care.

102.   Each of these acts and omissions constituted negligence under Alabama law, as Defendants failed to act as reasonably prudent law enforcement officers

would under similar circumstances.

103.    Defendants may contend they are entitled to state-agent or discretionary-function immunity. However, under Alabama law, state-agent immunity does not apply where officials act willfully, maliciously, fraudulently, in bad faith, or beyond their authority. Here, Defendants' conduct falls outside the scope of immunity because they acted in violation of clearly established constitutional rights, in reckless disregard for Plaintiff's safety, and in a manner wholly inconsistent with their lawful authority.

104.    As a direct and proximate result of Defendants' negligent acts and omissions, Plaintiff sustained severe and permanent physical injuries, emotional distress, reputational harm, medical expenses, property damage, and other economic losses.

105.    Accordingly, Defendants are liable to Plaintiff for negligence under Alabama law, and Plaintiff is entitled to compensatory damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

106.    WHEREFORE, Plaintiff David Emblom respectfully requests that this Court:

a.    Enter Judgment in his favor on all counts of this Complaint;

b.    Award Compensatory Damages in an amount to be determined at trial,

covering emotional distress, mental anguish, reputational harm, lost income, and any other losses arising from the wrongful arrest and detention;

c. Award Punitive Damages against individual Defendants for their reckless or callous disregard of Mr. Emblom's constitutional and civil rights.

## CONCLUSION

The events described in this Complaint are not the result of a misunderstanding, miscommunication, or isolated error. Plaintiff David Emblom suffered severe physical injury, emotional trauma, and a deprivation of liberty at the hands of officers acting under color of law and without legal justification. These violations were not only unlawful, they were avoidable.

## JURY DEMAND

Plaintiff requests a trial by jury on all issues so triable.

Respectfully submitted this the 26th day of September, 2025.

/s/ Eric J. Artrip
Eric J. Artrip (ASB-9673-I68E)
MASTANDO & ARTRIP, LLC
301 Holmes Ave., NE, Ste. 100
Huntsville, Alabama 35801
Phone: (256) 532-2222
Fax: (256) 513-7489
artrip@mastandoartrip.com

*/s/ Martin Weinberg*
Martin Weinberg (ASB-0817-A61W)
LAW OFFICES OF MARTIN WEINBERG
Po Box 154
Shannon, AL 35142
Phone: 205-239-5321
*attorneyweinberg@bellsouth.net*
*attorneyweinberg.assistant@gmail.com*

## DEFENDANTS TO BE SERVED VIA CERTIFIED MAIL

**John Doe 1**
**(Name and identity currently unknown, last name Best)**
**To be served upon identification**
**c/o Madison County Sheriff's Office**
**100 Northside Square**
**Huntsville, AL 35801**

**Matthew Cleveland**
**3504 Mastin Lake Rd NW**
**Huntsville, AL 35810**

**Nathan Whitman**
**218 Miller LN**
**Owens Cross Roads, AL 35763**